## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CED Red Lake Falls Community Hybrid, LLC, | Civil File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Minnesota Public Utilities Commission, | |
| Defendant. | |

Plaintiff CED Red Lake Falls Community Hybrid, LLC, previously Red Lake Falls Community Hybrid, LLC[1] ("Red Lake Falls" or "Plaintiff") who is a developer of a qualifying facility ("QF") under the Public Utility Regulatory Policies Act of 1978 ("PURPA") in the state of Minnesota, states and alleges as follows:

### SUMMARY OF ACTION

1.      This is an enforcement action pursuant to Section 210 of PURPA, 16 U.S.C. § 824a-3, against Defendant Minnesota Public Utilities Commission ("MPUC" or "Defendant") resulting from its order in violation of PURPA and the Federal Energy Regulatory Commission's ("FERC") PURPA regulations.  If allowed to stand, Defendant's violations of PURPA will result in substantial economic damage to Plaintiff.

---

[1] In February 2017, Red Lake Falls Community Hybrid, LLC (a Minnesota limited liability company) merged into CED Red Lake Falls Community Hybrid, LLC (a Delaware limited liability company), with the CED Red Lake Falls Community Hybrid, LLC  being the surviving entity.

2.      Plaintiff is a developer of a 4.6 megawatt ("MW") hybrid solar/wind QF located in Red Lake County, Minnesota.  QFs are small power producers which meet certain statutory requirements and are granted rights under PURPA to sell energy to utilities at the utilities' avoided cost of conventional generation calculated as of the date a QF establishes a legally enforceable obligation ("LEO").

3.      Defendant has violated Plaintiff's rights under PURPA to sell its output to the interconnecting utility in Minnesota, Otter Tail Power Company ("OTP") at an avoided cost calculated as of the date the QF established a LEO.  18 C.F.R. § 292.304(d)(2).

4.      Avoided cost is defined as "the cost to the utility which, but for the purchase from the qualifying facility, would be incurred by the utility in generating the electricity itself or purchasing the electricity from another source."  Am. Paper Inst. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 404, 103 S. Ct. 1921, 1924 (1983).

5.      A LEO is created as of the date at which the QF shows it made a commitment to sell its output to a particular utility and thereby created an obligation for the utility to purchase the power made available by the QF. *JD Wind 1, LLC*, 129 FERC P 61,148, at P 25 (2009).

6.      Defendant has disregarded and violated this federal mandate by preventing Plaintiff from contracting to sell the output of its planned project at rates calculated as of the date Defendant found Plaintiff had created a valid LEO.  Defendant issued an order finding that Plaintiff had incurred a LEO as of December 7, 2016, but assigned Plaintiff an avoided cost based on pricing information from January 2017.  This determination on its face violates PURPA.

7.     Plaintiff seeks a declaratory order finding that Defendant's reliance on OTP's 2017 Small Power Production Tariff as a substitute for calculating the avoided cost of a non-tariff eligible project with a LEO date of December 7, 2016 is inconsistent with FERC's PURPA regulations, and therefore the MPUC Order does not reasonably implement PURPA.

## THE PARTIES

8.     Plaintiff CED Red Lake Falls Community Hybrid, LLC is a Delaware limited liability company which is developing a hybrid solar/wind project in Red Lake Falls County, Minnesota.  The project meets the definition of, and has registered with FERC as, a "qualifying facility" under PURPA.  Red Lake Falls has committed to sell the electrical output of its facility to OTP, which is obligated under PURPA to purchase such output at its avoided cost.

9.     Defendant MPUC is an agency of the State of Minnesota required by PURPA to implement FERC's regulations consistently with PURPA.  The MPUC's mailing address is 121 7th Place East, Suite 350, St. Paul, MN 55101-2147.

## JURISDICTION AND VENUE

10.     This action is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq. and Federal Rule of Civil Procedure 57.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it brings a claim arising under federal law, specifically PURPA Section 210(h)(2)(B).

12.     This Court has personal jurisdiction over the Defendant because it is a state agency of the State of Minnesota and it is headquartered in the District of Minnesota.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because all or a substantial part of the events giving rise to this action occurred in the District of Minnesota.

## STANDING AND EXHAUSTION

14.     Section 210 of PURPA authorizes "[a]ny electric utility, qualifying cogenerator, or qualifying small power producer" to petition FERC to enforce the requirements of PURPA against a state regulatory agency.   16 U.S.C. § 824a-3(h)(2). FERC's authority extends to situations where state agency implementation actions under PURPA "are inconsistent with or contrary to the Commission's regulations."   *Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utilities Regulatory Policies Act of 1978*, 23 FERC ¶ 61,204 at 61,644 (1983).   If FERC does not initiate an enforcement action within 60 days, the party seeking enforcement, "may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate."   16 U.S.C. § 824a-3(h)(2)(B).

15.     The QF Plaintiff, who is a "qualifying small power producer" within the meaning of PURPA, petitioned FERC to enforce PURPA and FERC's implementing regulations on September 26, 2018. On November 20, 2018, FERC issued a Notice of Intent Not to Act stating:

4

> Notice is hereby given that the Commission declines to initiate an enforcement action pursuant to section 210(h)(2)(A) of PURPA. Our decision not to initiate an enforcement action means that Petitioners may themselves bring an enforcement action against the Minnesota Commission in the appropriate court.

(Notice of Intent Not to Act at ¶2, attached as Exhibit D.)  Plaintiffs have exhausted their administrative remedies and have standing under PURPA to bring suit.

## LEGAL AND FACTUAL BACKGROUND

**PURPA and FERC's PURPA Regulations**

16.    Congress enacted the Public Utility Regulatory Policies Act of 1978 ("PURPA") to encourage cogeneration and small power production.  16 U.S.C. § 824a-3(a).  Congress tasked FERC with developing rules for implementing PURPA, including rules requiring utilities to purchase electricity from qualifying small power production facilities, or QFs.  16 U.S.C. § 824a-3(a)(2).

17.    In order to facilitate sales from QFs to utilities, FERC's regulations contain rules for setting appropriate rates for such sales.  The rate a utility must pay to a QF for energy is the utility's "'full avoided cost,' *i.e.*, the cost to the utility which, but for the purchase from the qualifying facility, would be incurred by the utility in generating the electricity itself or purchasing the electricity from another source." Am. Paper Inst., 461 U.S. at 404, 103 S. Ct. at 1924.

18.    FERC regulations also dictate that a QF has the ability to choose between selling its power at "the avoided cost calculated at the time of delivery" or at "the avoided cost calculated at the time the obligation is incurred."  18 C.F.R. § 292.304(d)(2)(i)-(ii).

19.    PURPA relies on a system of cooperative federalism, which requires each state regulatory authority and nonregulated utility to implement PUPRA in accordance with FERC's rules.  16 U. S. C. § 824a-3(f).  In Minnesota, the regulatory authority responsible for such implementation is the MPUC.

**CED Red Lake Falls Community Hybrid, LLC**

20.    Red Lake Falls is a 4.6 MW hybrid solar/wind project located in Red Lake County.  Red Lake Falls properly self-certified with FERC as a QF on March 17, 2016.[2] In compliance with 18 C.F.R. § 292.207(c)(l), OTP and the MPUC were provided with Red Lake Falls's form QF-556 the same day.  Red Lake Falls began negotiating with OTP in October 2015.  After months of unsuccessful negotiation, Red Lake Falls filed a complaint with the MPUC against OTP on December 7, 2016, to determine the appropriate terms of a power purchase agreement between the two parties pursuant to PURPA.  An evidentiary hearing was held in this matter on August 29-30, 2017.  Administrative Law Judge Jeffery Oxley ("the ALJ") issued Findings of Fact, Conclusions of Law, and Recommendation on December 27, 2017 (the "ALJ's Report").  Following the ALJ's Report, the parties filed Exceptions and Replies to Exceptions to the ALJ's Report between January 16 and January 26, 2018.  The MPUC held a hearing on the matter on February 27, 2018.

21.    At the February 27, 2018 hearing, the MPUC noted that OTP and Red Lake Falls had previously been close to an agreement regarding the appropriate avoided cost.

---

[2] *See* FERC Form 556 of Red Lake Falls Community Hybrid, LLC (Mar. 17, 2016), FERC Docket No. QF16-557(Attachment 3).

As a result, the MPUC directed OTP and Red Lake Falls to pursue further negotiations with the guidance provided by the MPUC regarding contract length. Negotiations quickly broke down again as OTP made a single offer and then refused to respond to Red Lake Falls' counteroffers. As a result, the MPUC held another hearing on April 26, 2018. Following the second hearing, the MPUC issued its Order Establishing Date of Legally Enforceable Obligation, Term Length, and Avoided Cost of Energy for the Red Lake Falls Hybrid Solar/Wind Project on May 31, 2018 (the "MPUC Order," attached as Exhibit A). The MPUC found that Red Lake Falls created a LEO as of December 7, 2016, but assigned Red Lake Falls an avoided cost calculated in January of 2017. On June 20, 2018, Red Lake Falls requested reconsideration based on the MPUC's decision on avoided cost. On August 6, 2018, the MPUC issued its Order Denying Reconsideration, which is attached as Exhibit B.

**The MPUC's Failure to Implement PURPA**

22.     Under PURPA, "each State regulatory authority or nonregulated utility must implement [FERC's] rules." Order No. 69, 45 Fed. Reg. 12,214, 12,216. Such state implementation must be "pursuant to and consistent with [the] Commission's regulations under PURPA." *Connecticut Light & Power Co.*, 70 FERC ¶ 61,012 at 61,023 (1995) ("*CL&P*"). State implementation of PURPA may take the form of regulations, case-by-case adjudication, or a combination of these or other actions so long as the state reasonably implements FERC's PURPA rules. *See FERC v. Mississippi*, 456 U.S. 742, 751 (1982). Under FERC's regulations implementing PURPA, utilities are required to pay QFs "the incremental costs to an electric utility of electric energy or capacity or both which, but for

the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source."  18 C.F.R. § 292.101(b)(6).

23.     A QF has the option to receive "the avoided cost calculated at the time the [legally enforceable] obligation is incurred."  18 C.F.R. § 292.304(d)(2)(ii).  FERC has emphasized that it is the QF's "unconditional right to choose whether to sell its power 'as available' or at a forecasted avoided cost rate pursuant to a legally enforceable obligation." *Hydrodynamics, Inc*, 146 FERC ¶ 61, 193 at P31 (2014).  The MPUC in this case found that Red Lake Falls had incurred a LEO as of December 7, 2016.

24.     Under applicable federal regulations, Red Lake Falls is thus entitled to an avoided cost rate calculated using numbers from 2016.  Instead, the MPUC improperly decided to use numbers from OTP's 2017 Small Power Production Tariff filings[3] by reasoning that the early 2017 price of energy "closely corresponds to the time the LEO was established in this matter in December 2016."  MPUC Order at 13.  The MPUC's statement is contrary to law, and ignores well-established precedent as cited above.

25.     The LEO date is critical to project developers because it establishes their right under 18 C.F.R. § 292.304(d)(2)(ii) to an avoided cost price calculated as of that date. In *Cedar Creek Wind, LLC*, recognizing the important correlation between LEO date and contract rate, FERC stated that a LEO can be formed without utility cooperation to prevent a utility from delaying "so that a later and lower avoided cost is applicable."  *Cedar Creek Wind, LLC*, 137 FERC ¶ 61,006, 61,023 (2011).  Here, the MPUC recognized a certain

---

[3] OTP's Small Power Production Tariff is limited to projects with a nameplate capacity up to 100kW.

LEO date, but then still applied a later and lower cost from after that LEO date.  The MPUC's order on avoided cost violates 18 C.F.R. § 292.304(d)(2)(ii) by refusing to assign Red Lake Falls an "avoided cost calculated at the time the [legally enforceable] obligation is incurred."

26.   The reason OTP's 2017 Small Power Production Tariff was before the MPUC was because OTP submitted it in case the MPUC did not find Red Lake Falls had created a LEO in 2016.  The MPUC stated that its choice was proper because, "The Small Power Production Tariff is one of the 12 options advanced by the parties, considered by the ALJ, and is a calculation specifically supported by both Otter Tail and the Department."[4]  The testimony the ALJ, and subsequently MPUC, relied on to make this assertion comes from the Supplemental Direct Testimony of Mr. Brian Draxten, OTP's Resource Planning Manager.  This testimony, supporting the use of the 2017 Small Power Production Tariff rates states:

> The pricing included in my Affidavit/Prefiled Direct Testimony reflected discussions between OTP and Red Lake that ended with a proposal from OTP to Red Lake on September 28, 2016.  That proposal anticipated that a legally enforceable obligation (LEO) would be established in 2016.  As a result, the proposal reflected OTP's 2016 Small Power Production Tariff rates . . . Accordingly, *if a LEO is established in 2017*, OTP's 2017 Small Power Production Tariff rates form the appropriate basis for pricing.

Draxten Supplemental Direct Pre-Filed Testimony at 1 (emphasis added) (attached as Exhibit C).  As OTP acknowledged through this testimony, the proper rate is dependent

---

[4] Notably, Red Lake Falls never supported this rate, as Red Lake Falls always believed it was inappropriate based on when it formed a LEO.

upon the date when Red Lake Falls created a LEO.  The MPUC was clearly incorrect in using this testimony to support its decision to apply a 2017 rate.

27.     If the MPUC had wished to rely on OTP's Small Power Production Tariff filings, the MPUC could only lawfully consider the 2016 rate.  Instead, the MPUC chose a rate that only became effective January 1, 2017.  *See In the Matter of the Annual Filing of Cogeneration and Small Power Production Rates for Otter Tail Power Company*, Docket No. E999/PR-17-09.  The information underlying the 2017 Small Power Production Tariff was not available to Red Lake Falls as of December 7, 2016.  If the Red Lake Falls project was small enough to be eligible for OTP's Small Power Production tariff rate and had a LEO date of December 7, 2016, the project would automatically be entitled to the 2016 Small Power Production Tariff rate, rather than the 2017 Small Power Production tariff.

28.     There is no legal basis for the MPUC's reliance on a rate established after the LEO date, and the MPUC is effectively punishing Red Lake Falls for having a project over the tariff size limit by assigning it a lower avoided cost than required by law.  18 C.F.R. § 292.304(d)(2)(ii).  FERC precedent dictates that, "Under [FERC] regulations, [a QF] has the right to choose to sell pursuant to a legally enforceable obligation, and, in turn, has the right to choose to have rates calculated at avoided costs calculated at the time that obligation is incurred."  *JD Wind 1*, 130 FERC at ¶ 61,634.  The MPUC impermissibly gave Red Lake Falls a rate calculated at avoided costs *after* the time the LEO was incurred.

29.     The MPUC reveals its motive via *dicta* in the order.  The MPUC decided on the 2017 tariff rate because the MPUC was uncomfortable awarding Red Lake Falls a contract at the full rate to which it is entitled.  The MPUC said:

The [MPUC] notes parenthetically that the interpretation of avoided costs advanced by [Red Lake Falls] would result in costs per ratepayer of some $57 MWh. This is hardly a fair and equitable rate *in an environment where the record developed in this matter shows that current avoided cost of renewables is significantly less.*

MPUC Order at 13 (emphasis added). This is directly contrary to FERC precedent. FERC has stated that it has "consistently affirmed the right of QFs to long-term avoided cost contracts or other legally enforceable obligations with rates *determined at the time the obligation is incurred, even if the avoided costs at the time of delivery ultimately differ from those calculated at the time the obligation is originally incurred.*" *JD Wind 1*, 130 FERC at ¶ 61,631 (emphasis added).

30.     Legally, if the QF requests the avoided cost to be calculated "at the time the obligation is incurred," the MPUC may only set avoided cost based on avoided cost information which was available to the QF prior to the formation of the LEO. QFs are entitled by law to the full avoided cost calculated from the date regardless of energy market fluctuations in the future. The MPUC may not justify its decision by claiming that the price of renewables when it issued its order in May 2018 was closer to the January 2017 price than it was to the price in December of 2016, which was the date established by the MPUC for Red Lake Falls's 2016 LEO. The date that matters for calculating avoided cost is the date of the LEO, not the date of the MPUC's decision.

31.     Although OTP's Small Power Production Tariff is not based on the avoided cost of other renewable resources alone, it is clear that the MPUC chose this improper 2017 rate because it felt it was a better approximation of what it felt renewables were worth at the time of the order rather than because it found it to be the proper full avoided cost for

the Red Lake Falls project under PURPA as of December of 2016.  An interpretation of PURPA which does not effectively allow renewable QFs to compete against fossil fuel generation clearly fails to implement the most straightforward reason for PURPA's existence.  *See* 45 Fed. Reg. 12222 (1980).  In fact, under FERC's regulations, a QF's ability to reduce a utility's fossil fuel use are supposed to be taken into account when calculating avoided cost.  18 C.F.R. § 292.304(e)(3).  An interpretation that presumes renewable QF resources' avoided cost price should only be compared to the cost of other renewable resources plainly violates PURPA.

## FIRST CLAIM FOR RELIEF: DECLARATORY JUDGMENT

32.    Plaintiff realleges each of the foregoing paragraphs as if set forth in full.

33.    Red Lake Falls seeks an order declaring that the MPUC's Order Establishing Date of Legally Enforceable Obligation, Term Length, and Avoided Cost of Energy for the Red Lake Falls Hybrid Solar/Wind Project and subsequent Order Denying Reconsideration is inconsistent with and violates Plaintiff's right as a QF under PURPA and FERC's regulations.

34.    The MPUC Order violates 18 C.F.R. § 292.304(d) by denying a QF an avoided cost rate calculated at the time the project incurred a LEO on December 7, 2016.

## PRAYER FOR RELIEF

35.    WHEREFORE, Plaintiff respectfully requests that this Court grant:

(a)    A declaratory judgment that:

1.    the MPUC Order does not reasonably implement PURPA and FERC's regulations implementing PURPA.

2.      the MPUC's reliance on Otter Tail's 2017 Small Power Production Tariff as a substitute for calculating the avoided cost of a non-tariff eligible project with a LEO date of December 7, 2016 is inconsistent with the FERC's PURPA regulations.

3.      the MPUC must set a rate for Red Lake Falls that complies with PURPA and FERC's PURPA regulations by basing it on information available on December 7, 2016.

(b)      Such further relief as the Court deems just, equitable, and reasonable.

*[signature block on following page]*

Respectfully submitted,


Dated:  June 4, 2019                    **UDA LAW FIRM, P.C.**


                                        By: *s/ Michael J. Uda*
                                            Michael J. Uda (*pro hac vice admission
                                            forthcoming*)
                                        7 W. Sixth Avenue
                                        Power Block Suite 615
                                        Helena, MT  59601
                                        Telephone:  (406) 457-5311
                                        Email:   michaeluda@udalaw.com


                                        **MASLON LLP**


                                        By: *s/ David E. Suchar*
                                            David E. Suchar (#392583)
                                            Evan A. Nelson (#0398639)
                                        3300 Wells Fargo Center
                                        90 South Seventh Street
                                        Minneapolis, MN 55402
                                        Telephone:  (612) 672-8200
                                        Email:   david.suchar@maslon.com
                                                 evan.nelson@maslon.com

                                        **ATTORNEYS FOR PLAINTIFF CED RED
                                        LAKE FALLS COMMUNITY HYBRID, LLC**